UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ELIZABETH GUNN,

                Plaintiff,

              v.                           Case No. 19-C-957

ANDREW M. SAUL,
Commissioner of Social Security,

                Defendant.

## DECISION AND ORDER REVERSING THE COMMISSIONER'S DECISION

Plaintiff Elizabeth Gunn filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for disability insurance benefits under Title II of the Social Security Act. She claims that she is unable to work because of a combination of mental impairments. Gunn contends that the decision of the administrative law judge (ALJ) is flawed and requires remand because the ALJ's residual functional capacity (RFC) assessment does not account for Gunn's variable functioning and deficits with concentration, persistence, or pace, and because the ALJ erred in determining that Gunn's statements concerning the limiting effects of her symptoms are not entirely consistent with the record. For the reasons that follow, the Commissioner's decision will be reversed and remanded.

### BACKGROUND

On May 18, 2016, Gunn filed an application for disability insurance benefits, alleging disability beginning September 2, 2015. She listed post-traumatic stress disorder, severe anxiety, severe depression, fear, and frequent fatigue as the conditions that limited her ability to work. R. 291. After her application was denied initially and on reconsideration, Gunn requested a

hearing before an ALJ.  ALJ Michael Balter conducted a hearing on August 6, 2018.  Gunn, who was represented by counsel, and a vocational expert (VE) testified.  R. 50–80.

At the time of the hearing, Gunn was 53 years old and lived in a condo with her fiancé.  R. 55, 67.  She had an associate degree in chemical technology and previously worked as a lab technician and group lead at a biotech company.  R. 56.  In July 2015, Gunn attended a family picnic and heard there was a shooting two to four blocks away.  R. 57.  She witnessed an individual drive down the street during the picnic, smash his car into a tree, and run away.  R. 1060.  Two men came after him and she advised them, "he went that way."  R. 58.  Since that time, Gunn has been convinced people are following her and trying to hurt her.  *Id.*  Gunn moved from Milwaukee to West Bend where she thought she would be safer.  R. 58.  She testified that she does not leave her house or see her family because she is afraid of Milwaukee and believes someone will try to hurt her or her family.  R. 58, 60.  Even being in West Bend, she feels someone is following her on a daily basis and contacts the police if she sees an African American.  R. 58.

Gunn had voluntary admissions to the hospital for mental health reasons in 2015, 2016, and 2017, and had extensive outpatient therapy.  R. 60.  She takes trazodone, sertraline, buspirone, risperidone, and lorazepam and goes to therapy.  R. 61–62.  Plaintiff reported having memory problems and has difficulty reading a book and staying on task.  R. 65.  She does not have difficulty following instructions.  R. 65.  She leaves the house once a week and does not have any hobbies.  R. 66–67.

In a nine-page decision dated November 6, 2018, the ALJ concluded Gunn was not disabled.  R. 36–44. Following the Agency's sequential evaluation process, the ALJ found at step one that Gunn had not engaged in substantial gainful activity since September 2, 2015, the alleged onset date.  R. 38.  At step two, the ALJ determined Gunn had the following severe impairments:

2

major depressive disorder, anxiety disorder, and post-traumatic stress disorder. *Id.* He concluded the other impairments appearing in the medical history or allegations, including gastroesophageal reflux disease, hypertension, and dysphagia, are not severe because they are transitory, resolved, controlled, or impose no work limitations. *Id.* At step three, the ALJ found that Gunn did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After reviewing the record, the ALJ determined Gunn had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: "she can understand and remember simple instructions and carry out routine and repetitive tasks; she is limited to occasional interaction with the public, supervisors, and coworkers; she is limited to simple work related decisions; and she can adapt to changes within a routine work setting." R. 40. With these limitations, the ALJ found at step four that Gunn was unable to perform her past relevant work as a lab technician and a group lead. The ALJ determined at step five that there are jobs that exist in significant numbers in the national economy that Gunn can perform, including dishwasher, hand packager, and machine feeder. R. 43–44. Based on these findings, the ALJ concluded Gunn has not been under a disability from September 2, 2015, through the date of the decision. R. 44. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Gunn's request for review. Thereafter, Gunn commenced this action for judicial review.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national

economy that the claimant can perform shifts to the SSA at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of the Social Security Administration. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom if ever available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether

4

the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court recently reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

## ANALYSIS

### A. RFC Determination

Gunn raises a number of challenges to the ALJ's decision. She first challenges the ALJ's RFC finding. Gunn asserts that the ALJ's RFC assessment did not fully encapsulate the limitations caused by her mental impairments. It is well established that "[b]oth the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the claimant's limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014).

At step three of the sequential evaluation process, the ALJ found that Gunn has a "moderate limitation" with regard to concentrating, persisting, or maintaining pace. R. 39. In his review of the medical record, the ALJ considered the February 23, 2017 opinions of State agency psychologist Dr. Kiela Bolden and gave her opinions great weight. R. 42. Dr. Bolden noted in Section I of the Mental Residual Functional Capacity Assessment (MRFCA) form that Gunn would be moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, accept instructions and respond appropriately to criticism

from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. R. 211–13. Notwithstanding these limitations, Dr. Bolden provided the following narrative explanation of Gunn's mental residual functional capacity:

> The claimant retains sufficient mental capacity to understand, remember, and carry out simple instructions. The claimant is able to deal with co-workers, supervisors, and the public on a limited basis. The evidence shows that the claimant retains sufficient mental capacity to carry out simple tasks with adequate concentration, persistence and pace. The claimant's ability to handle stress and pressure in the work place would be reduced but adequate to handle the stresses of routine work.

R. 213. The ALJ ultimately found that Gunn had the following limitations: "she can understand and remember simple instructions and carry out routine and repetitive tasks; she is limited to occasional interaction with the public, supervisors and coworkers; she is limited to simple work related decisions; and she can adapt to changes within a routine work setting." R. 40. Gunn argues that the ALJ's RFC does not sufficiently account for her moderate limitations in concentration, persistence, and pace (CPP).

Gunn's argument finds strong support in several Seventh Circuit opinions. While the ALJ may have thought that the limitations provided in the RFC were sufficient to account for the moderate difficulties in CPP the ALJ found, the Seventh Circuit has made clear that they are not. As the Seventh Circuit explained in *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019),

> We have previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace. The ALJ's analysis is similarly flawed with respect to DeCamp's mild limitations in understanding, remembering, and carrying out simple instructions and her moderate limitations in concentration, persistence, and pace as found by Dr. Goldstein. An ALJ need not use specific terminology, but we have repeatedly rejected the notion that a hypothetical . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.

7

*Id.* at 675–76 (internal quotation marks and citations omitted) (alteration in original).

Citing the court's unpublished decision in *Urbanek v. Saul*, 796 F. App'x 910 (7th Cir. 2019), the Commissioner maintains that the Seventh Circuit has not created categorical rules finding that the RFC finding of simple, routine, and repetitive tasks, occasional interactions with others, and simple work-related decisions are insufficient to account for moderate deficits in maintaining CPP. Def.'s Br. at 8, Dkt. No. 21. In *Urbanek*, the Seventh Circuit recognized that "[e]ven generic limitations, such as limiting a claimant to simple, repetitive tasks, may properly account for moderate limitations in concentration, persistence, and pace, so long as they 'adequately account for the claimant's demonstrated psychological symptoms' found in the record." *Id.* at 914 (citing *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010); *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002)). "Although the ALJ did not explicitly mention 'moderate limitations in concentration, persistence, or pace' in her residual-functional-capacity assessment or in the hypothetical question," the court found that "she appropriately relied on Dr. Rozenfeld's testimony to formulate Urbanek's residual functional capacity . . . and included all the doctor's proposed limitations in the residual functional capacity and the hypothetical." *Id.* But *Urbanek* is distinguishable from the facts of this case as the ALJ in *Urbanek* relied on the testifying medical expert to assess the claimant's limitations in CPP. *Id.* In this case, by contrast, no medical expert testified at the administrative hearing.

The ALJ also erred in failing to include the additional limitations Dr. Bolden found Gunn had with respect to the other more specific activities within the CPP domain, including the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms. *See* R. 212. Having given Dr. Bolden's opinion "great weight," the ALJ was required

to include all of the limitations found by Dr. Bolden in the RFC and hypothetical posed to the VE, or explain why some were rejected.  *See DeCamp*, 916 F.3d at 676.  In *DeCamp*, the ALJ gave some weight to the mental limitations identified by three psychologists.  *Id.* at 674.  The court rejected the Commissioner's argument that the ALJ adequately accounted for DeCamp's limitations in her RFC determination and in the hypothetical question to the VE "by relying in part on the narrative explanations (the part of the PRT and MRFC forms where the doctors provide a written explanation of their findings, rather than the check-box sections) offered by" the state agency psychologists.  *Id.* at 676.  The court reasoned,

> True, both doctors offered narrative explanations in addition to the check-boxes on the assessment forms, and an ALJ may rely on those descriptions.  But even if an ALJ may rely on a narrative explanation, the ALJ still must adequately account for limitations identified elsewhere in the record, including specific questions raised in check-box sections of standardized forms such as the PRT and MRFC forms. . . . Here the ALJ . . . focused her analysis on the doctors' bottom-line conclusion that DeCamp was not precluded from working without giving the vocational expert any basis to evaluate *all* DeCamp's impairments, including those in concentration, persistence, and pace.

*Id.* (citations omitted).

This court is bound by the precedent of the Court of Appeals for the Circuit in which this district is located.  Though the SSA's own rulings, regulations, and manuals seem to say otherwise, *see Hoeppner v. Berryhill*, 399 F. Supp. 3d 771, 776–78 (E.D. Wis. 2019), *DeCamp* seems to mandate that the ALJ include in the RFC and in the corresponding hypothetical question to the VE all of the limitations contained in the "summary conclusions" or "worksheet" section of the MRFCA form.  916 F.3d at 675–76; *Radosevich v. Berryhill*, 759 F. App'x 492 (7th Cir. 2019); *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015).  As this court has previously observed, although the ALJ's attempt to translate those limitations into job-related restrictions that fit within the VE's terminology is understandable, doing so risks likely appeal and almost certain reversal.  *See*

*Hoeppner*, 399 F. Supp. 3d at 776–78.  In other words, if the ALJ finds that the claimant has moderate limitations in CPP, the ALJ should simply ask the VE to assume moderate difficulties in CPP without trying to translate for the VE what the ALJ concluded the claimant could and could not do.  In sum, the ALJ's RFC assessment does not adequately address the limitations found by Dr. Bolden.  Based on circuit precedent, the ALJ's failure to ensure that all of Gunn's moderate limitations in CPP are incorporated into the RFC assessment requires reversal in this case.

## B. Evaluation of Symptoms

On remand, the Commissioner should also revisit the ALJ's assessment of Gunn's statements regarding her symptoms.  The Social Security regulations set forth a two-step procedure for evaluating a claimant's statements about the symptoms allegedly caused by her impairments.  *See* 20 C.F.R. § 416.1529.  First, the ALJ determines whether a medically determinable impairment "could reasonably be expected to produce the pain or other symptoms alleged." *Id.* § 404.1529(a).  If so, the ALJ then "evaluate[s] the intensity and persistence" of the claimant's symptoms and determines how they limit the claimant's "capacity of work." *Id.* § 404.1529(c)(1).  In evaluating the intensity and persistence of a claimant's symptoms, the ALJ looks to "all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating and nontreating source, or other persons about how your symptoms affect you." *Id.*  The ALJ also considers medical opinions. *Id.*  The ALJ then determines whether the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are consistent with the objective medical evidence and the other evidence of record.

Until recently, the evaluation of the intensity, persistence, and limiting effects of the claimant's symptoms was viewed by the SSA as a credibility determination. *See* SSR 96–7p.  In March 2016, the SSA released a new ruling regarding the evaluation of symptoms in disability

claims. SSR 16–3p; "Titles II and XVI: Evaluation of Symptoms in Disability Claims," 2016 WL 1119029 (effective March 28, 2016). This new ruling supersedes SSR 96–7p. In adopting SSR 16–3p, the SSA eliminated the use of the term "credibility" from its sub-regulatory policy in order to "clarify that subjective symptom evaluation is not an examination of an individual's character." 2017 WL 5180304, at \*2. The question the SSA asks under SSR 16–3p, is whether the symptoms claimed "can reasonably be accepted as consistent with the objective medical and other evidence." 20 C.F.R. § 404.1529(a). It is the revised standard that applies here.

Gunn challenges the ALJ's assessment of her statements concerning her statements describing her symptoms as "not entirely consistent with the medical evidence and other evidence in the record." The ALJ noted Gunn's claims of extreme anxiety, paranoid fear of being followed by men intent on hurting her, and her inability to function. He noted her improvement after each of her hospitalizations with medication and intense outpatient treatment, her GAF scores showing mild symptoms, and her improved mood and mental status. R. 41. Gunn claims, however, that such improvement is to be expected after hospitalizations and intense outpatient treatment. She contends that the record shows the improvement is not lasting, and the ALJ's failure to address the variability of her impairment both in his RFC determination and in assessing her statements concerning her statements warrants remand, as well.

Since the court has already concluded that a remand is necessary to address Gunn's RFC, the court will also direct the ALJ to address this issue as well. To be sure, the fact that Gunn no longer lives in a dangerous neighborhood would seem to reduce the reasons she previously had for fearing for her safety. It may be that her worsening symptoms were tied to specific incidents, i.e., a break-in, a neighborhood shooting, the death of her nephew and the subsequent trial of the person responsible—all of which may have faded into the past. The question of whether a person is unable

11

to leave the house is, of course, different than whether a person is anxious about leaving. ALJs are tasked with the difficult job of deciding such questions, and while the standard for assessing such statements has changed, the law requiring deference to their determinations has not. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED** and **REMANDED** to the SSA pursuant to 42 U.S.C. § 405(g) (sentence four) for further proceedings consistent with this order. Although the decision is reversed because of the error in failing to account for deficits in CPP in the RFC assessment, the Commissioner should also address Gunn's other claims of error on remand, including the ALJ's failure to account for Gunn's variable functioning in the RFC and in determining that Gunn's statements concerning the limiting effects of her symptoms are not entirely consistent with the record. Further consideration of those claimed errors on remand will aid in reaching a final resolution of the case and avoid further remands in the future. The Clerk is directed to enter judgment accordingly.

**SO ORDERED** at Green Bay, Wisconsin this 19th day of November, 2020.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

12